**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**CLARA C. GAITHER** **PLAINTIFF**

**V.**    **CASE NO. 4:11-CV-576 KGB**

**ARKANSAS FOUNDATION FOR MEDICAL CARE** **DEFENDANT**

## BRIEF IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Defendant, Arkansas Foundation for Medical Care (AFMC), by and through its attorneys, Cross, Gunter, Witherspoon & Galchus, P.C., for its Brief in Support of its Motion for Summary Judgment, states:

## I. INTRODUCTION

This is an employment discrimination case.  Plaintiff, Clara Gaither (Gaither), filed two (2) separate Complaints against AFMC, her employer, alleging that AFMC discriminated against her based on her race, color, and age in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e (Title VII), and that AFMC retaliated against her for filing a charge of discrimination.  Specifically, Gaither alleges AFMC discriminated and retaliated against her when it failed to promote her.  The undisputed facts and authority cited in this Brief establish that AFMC is entitled to summary judgment.  As will be discussed in detail, Gaither's claims of race, color, and age discrimination and retaliation fail as a matter of law.  Summary judgment on all claims, therefore, is appropriate.

## II.  FACTS

### A.   Gaither's Employment History at AFMC

On or about September 10, 2009, Gaither was offered and accepted a receptionist position at AFMC, and her employment began with AFMC on or about September 14, 2009.  (Exhibit 1, Offer Letter; Exhibit 2, Gaither Depo., p. 69–70.)  Gaither held the receptionist position during the entire time that she worked at AFMC.  (Exhibit 2, Gaither Depo., p. 72.)  AFMC had adopted a job description that summarized the receptionist position requirements.  (Exhibit 3, Receptionist Job Description; Exhibit 2, Gaither Depo., p. 70–71.)  On May 2, 2012, AFMC sent notice to Gaither, who was on extended leave from work, that her employment was terminated effective on April 30, 2012, after Gaither advised AFMC that she would not be able to return to work after having exhausted all her available leave time.  (Exhibit 4, Termination Letter; Gaither Depo., p. 81–82.)  Gaither acknowledged that she was not able to return from leave to work at AFMC.  (Exhibit 2, Gaither Depo., p 84–90.)

AFMC maintained an Equal Employment Opportunity Non-Discrimination Policy and non-discriminatory Recruiting Policy in its Employee Handbook.  (Exhibit 5, EEO Policy; Exhibit 6, Recruiting Policy; Exhibit 2, Gaither Depo. p. 73–77.)  Gaither acknowledged receipt of the Employee Handbook and that she was familiar with the Policies.  (Exhibit 7, Handbook Acknowledgements; Gaither Depo., p. 73–77.)

### B.   Gaither's Promotion Applications

On or about January 15, 2010, just a few months after Gaither was hired to the receptionist position, Gaither applied for an internal promotion at AFMC to a Health Information Technology (HIT) Program Coordinator position.  (Exhibit 8, Internal

Transfer Form.)  The HIT Program Coordinator position, based on the job description, required "[t]hree (3) years experience in healthcare."     (Exhibit 9, HIT Program Coordinator Job Description.)   The job also required "Experience in HIT or EHR (electronic health records)."   (*Id.*)   Gaither acknowledged that she did not have experience in HIT or EHR.  (Exhibit 2, Gaither Depo., p. 93–95.)  AFMC granted Gaither an interview for the position, but she was not selected, because she was not the most qualified applicant.  (Exhibit 10, John Clayborn Affidavit, at ¶ 3.)  Brittany Shachmut (22 year old white female), another internal candidate, was selected as the most qualified applicant, because her knowledge and experience performing similar duties as a Program Assistant with AFMC was more relevant to the position than Gaither's experience as a bus operator and receptionist.  (*Id.*)  Shachmut was promoted effective May 24, 2010.  (*Id.*)

On or about April 27, 2010, Gaither applied for an internal transfer to a Program Assistant position at AFMC.  (Exhibit 11, Internal Transfer Form; Exhibit 12, Program Assistant Job Description.)  AFMC granted Gaither an interview for the positions (there were two (2) openings that were filled), but she was not selected, because she was not the most qualified applicant.  (Exhibit 10, John Clayborn Affidavit, at ¶ 4.)   Gregory Green (56 year old black male), was selected as the most qualified applicant, because his bachelor's degree and eleven (11) years experience as a accounts payable analyst at Verizon Wireless was superior and more relevant to the position than Gaither's six (6) years experience as a bus operator and less than one (1) year experience as a receptionist.  (*Id.*)  Jody Sonnier (29 year old white female) was selected because her experience as a certified nursing assistant in a nursing home was more relevant to the

position working with AMFC's nursing home team than Gaither's experience as a bus operator and receptionist.  (*Id.*)  Green and Sonnier were hired effective on June 21, 2010.  (*Id.*)

On or about October 1, 2010, Gaither again applied for a Program Assistant position at AFMC.  (Exhibit 13, Internal Transfer Form; Exhibit 14, Program Assistant Job Description.)  AFMC granted Gaither an interview for the position, but she was not selected, because she was not the most qualified applicant.  (Exhibit 10, John Clayborn Affidavit, at ¶ 5.)  Rebecca Perez (28 year old Hispanic female), was selected as the most qualified applicant, because her eight (8) years experience in several administrative positions at Oasis Outsourcing was more relevant to the position than Gaither's experience as a bus operator and receptionist.  (*Id.*)  In addition, because the use of Microsoft Excel spreadsheets was a regular function of the position, the candidates were tested in the basics of Microsoft Excel.  (*Id.*)  Perez scored significantly higher on the test than Gaither, and was hired effective November 9, 2010.  (*Id.*)

On or about October 14, 2010, Gaither applied for a Computer Support Specialist position at AFMC.  (Exhibit 15, Internal Transfer Form; Exhibit 16, Computer Support Specialist Job Description.)  AFMC granted Gaither an interview for the position, but she was not selected, because she was not the most qualified applicant.  (Exhibit 10, John Clayborn Affidavit, at ¶ 6.)  Samuel Moix (25 year old white male), was selected as the most qualified applicant, because his knowledge of modern computer network systems and his recent experience as a computer support employee at Mayflower School District were superior to Gaither's computer-entry experience from the 1980's and 1990's.  (*Id.*)  Moix was hired effective November 9, 2010.  (*Id.*)

On or about June 30, 2011, Gaither applied for an HIT Program Coordinator position.  (Exhibit 17, Internal Transfer Form; Exhibit 18, HIT Program Coordinator Job Description.)   Prior to Gaither's interview for the position, AFMC cancelled the HIT Program Coordinator opening.  (Exhibit 10, John Clayborn Affidavit, at ¶ 7.)   The position was cancelled because AFMC Management determined that the position should be restructured to a higher level position, thereby requiring a candidate who had completed, at a minimum, a bachelor's degree.  (*Id.*)  The HIT Program Coordinator position, on the other hand, only required a high school diploma.  (*Id.*)   The new position, titled Senior Program Coordinator, HITArkansas, was posted after the HIT Program Coordinator position was cancelled.   (*Id.*; Exhibit 19, Senior Program Coordinator, HITArkansas Job Description.)  Gaither, who did not possess a bachelor's degree, did not apply for the Senior Program Coordinator, HITArkansas position. (Exhibit 10, John Clayborn Affidavit, at ¶ 7.)   Jennifer Pagan (a 27 year old white female), an applicant with a bachelor's degree from the University of California, Davis, was hired to the Senior Program Coordinator, HITArkansas position effective on August 11, 2011.  (*Id.*)  Pagan's experience as a Research Assistant with the Arkansas Center for Health Improvement and her experience in establishing the Arkansas Office of Health Information Technology made her a superior candidate than Gaither for the health information technology position.  (*Id.*)

Finally, on November 29, 2011, Gaither applied for a Computer Support Specialist position.  (Exhibit 20, Internal Transfer Form; Exhibit 21, Computer Support Specialist Job Description.)  Gaither was not selected for the position, because she was not the most qualified candidate.  (Exhibit 10, John Clayborn Affidavit, at ¶ 8.)  Brent

Carver (a 29 year old white male), an external applicant, was selected for the position because he was the most qualified candidate. (*Id.*) Carver was a Microsoft Certified Professional and Microsoft Certified Technology Specialist. (*Id.*) Carver had very recent experience maintaining computer networks and equipment in the United States Air Force, at Home Bancshares in Conway, Arkansas, and at Evolvent Technologies in Jacksonville, Arkansas. (*Id.*) Carver's knowledge and experience regarding modern computer network systems was far superior to Gaither's. (*Id.*) Carver was hired to fill the Computer Support Specialist position effective January 24, 2012. (*Id.*)

### C.    Gaither's EEOC Charges

Gaither filed a charge against AFMC with the Equal Employment Opportunity Commission on December 27, 2010, alleging that she was denied promotions due to her race and age. (Exhibit 22, EEOC Charge.) The charge was dismissed by the EEOC on May 23, 2011. (Exhibit 23, Dismissal and Notice of Rights.) Gaither filed a second charge against AFMC with the EEOC on November 1, 2011, alleging that she was denied the promotion to the HIT position because of her race, age, and in retaliation for filing the previous charge. (Exhibit 24, EEOC Charge.) The charge was dismissed by the EEOC on March 14, 2012. (Exhibit 25, Dismissal and Notice of Rights.) Gaither acknowledged that the promotion decisions are the only basis for her charges of discrimination (e.g., there are no other reasons why Gaither believes she was discriminated against.) (Exhibit 2, Gaither Depo., p. 168–170, 178–179.)

### III.  STANDARD OF REVIEW

In pertinent part, Fed. R. Civ. P. 56(c) states that summary judgment shall be granted if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).

In a trilogy of cases, the United States Supreme Court has established that summary judgment under Rule 56 should be interpreted to accomplish its purpose of disposing of cases that are factually unsupported.  These three cases also indicate that the trial judge's function is not to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Celotex Corp v. Catrett*, 477 U.S. 317 (1986); *Matsushita Elec. Indus. v. Zenith Radio Corp.,* 475 U.S. 574 (1986).

Further, this series of United States Supreme Court decisions "demonstrates that [federal courts] should be somewhat more hospitable to summary judgments than in the past."  *City of Mount Pleasant v. Associated Elec. Coop., Inc.,* 838 F.2d 268, 273 (8th Cir. 1988).  "The motion for summary judgment can be a tool of great utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time for those cases that really do raise genuine issues of material fact" and "need not be denied merely to satisfy a litigant's speculative hope of finding some evidence that might tend to support a complaint."  *Krenick v. County of Le Sueur*, 47 F.3d 953, 959 (8th Cir. 1995) (citations omitted).

Once a motion for summary judgment points out the absence of proof regarding an essential element of the non-movant's case, the burden shifts to the non-movant to offer probative evidence that would permit a finding in her favor on more than mere

speculation, conjecture, or fantasy.  *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992), *cert. denied*, 507 U.S. 913 (1993); *see also Fishbeck v. Hechler*, 85 F.3d 162, 169 (4th Cir. 1996) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986)).  Rule 56 requires that a response, by affidavits or other evidence, specifically show that there is a genuinely disputed issue of material fact.  *Jackson v. Anchor Packing Co.,* 994 F.2d 1295, 1304 (8th Cir. 1993) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).  **A plaintiff may not create a material issue of fact solely based upon her own testimony.**   *Helfter v. UPS,* 115 F.3d 613, 616 (8th Cir. 1997) (emphasis added).  Nor may the non-movant in a summary judgment motion rest upon the mere allegations of his or her pleadings.  *Id.*  **It is well settled that conclusory evidence or statements, rather than factual, are insufficient to support a response to a motion for summary judgment.**  *Jackson*, 994 F.2d at 1304; *see also Rose-Maston v. NME Hosp., Inc.*, 133 F.3d 1104, 1109 (8th Cir. 1998) (emphasis added).

Under Fed. R. Civ. P. 56, the non-moving party must establish **significant probative evidence** to prevent summary judgment.  *Johnson v. Enron Corp.*, 906 F.2d 1234, 1237 (8th Cir. 1990) (citations omitted) (emphasis added).  Summary judgment is appropriate "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp v. Catrett*, 477 U.S. 317, 322 (1986).  A failure to offer proof on any one element necessarily renders all other facts immaterial.  *Id.* at 323.  If the non-moving party is the party with the burden of proof at trial on a

material issue, the non-moving party must respond to a motion for summary judgment with evidence of specific facts showing a factual issue worthy of trial. *Id.* at 324.

"'There is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial.'" *Pulley v. United Health Group, Inc.*, 2013 U.S. Dist. LEXIS 66882 (E.D. Ark. May 10, 2013) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc). "'Because summary judgment is not disfavored and is designed for every action, [Eighth Circuit] panel statements to the contrary are unauthorized and should not be followed.'" (*Id.*)  Indeed, summary judgment "remains a useful pretrial tool to determine whether or not any case, including one alleging discrimination, merits a trial." *Pope v. ESA Services, Inc.*, 406 F.3d 1001, 1006 (8th Cir. 2005) (quoting *Berg v. Norand Corp.*, 169 F.3d 1140, 1144 (8th Cir. 1999)).

For the present case, brought under Title VII, the Court should employ the familiar *McDonnell Douglas* burden-shifting framework at the summary judgment stage. *Turner v. Honeywell Fed. Mfg. & Techs., LLC*, 336 F.3d 716, 720 (8th Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801-04 (1973)); *see also Griffith v. City of Des Moines*, 387 F. 3d 733, 735 (8th Cir. 2004) (reaffirming that *McDonnell Douglas* applies to Title VII motions for summary judgment).

First, under the familiar *McDonnell Douglas* burden-shifting framework, a presumption of discrimination is created when and if Gaither meets her burden of establishing a *prima facie* case of employment discrimination.   *Rothmeier v. Inv.*

*Advisers, Inc.*, 85 F.3d 1328, 1332 (8th Cir. 1996) (*citing Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981)).

Second, if Gaither establishes a *prima facie* case, the burden of production shifts to AFMC to show that it had a legitimate, nondiscriminatory reason for its actions. *Pope*, 406 F.3d at 1007; *see also Sprenger v. Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 1111 (8th Cir. 2001) (citing *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 507 (1993)).

Finally, when AFMC meets its burden of production, the presumption of discrimination disappears, requiring Gaither to prove that AFMC's proffered justification is false and merely a pretext for discrimination. *Johnson v. AT & T Corp.*, 422 F.3d 756, 763 (8th Cir. 2005) (*citing Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 146-47 (2000)).   At all times, however, the burden of persuasion, and the ultimate burden of proving intentional unlawful discrimination, remains with Gaither.  *Gagnon v. Sprint Corp.*, 284 F.3d 839, 847 (8th Cir. 2002) (citing *St. Mary's*, 509 U.S. at 507).

## IV.  ARGUMENT

### A.    Several of Gaither's Claims are Untimely

"In order to file a Title VII action, a plaintiff must first file an administrative charge with the EEOC within 180 days of the alleged unlawful employment practice."  *Bissada v. Ark. Children's Hosp.*, 2009 U.S. Dist. LEXIS 31831, 25–26 (E.D. Ark. 2009) (citing 42 U.S.C. § 2000e-5(e)(1); *Diaz v. Swift-Eckrich, Inc.*, 318 F.3d 796, 798 (8th Cir. 2003) (dismissing a Title VII claim as time-barred where the alleged unlawful employment practice occurred more than 180 days before the plaintiff filed her EEOC charge)). Gaither filed her first EEOC charge on December 27, 2010, so any events that occurred prior to June 27, 2010 (i.e., 180 days prior to December 27, 2010) are time-barred.

Gaither received notice that she was not selected to fill the HIT Program Coordinator position filled by Brittany Shachmut on or before May 24, 2010.  (Exhibit 2, Gaither Depo., p. 95–96; Exhibit 10, John Clayborn Affidavit, at ¶ 3.)  Gaither received notice that she was not selected to fill the Program Assistant positions filled by Gregory Green and Jody Sonnier on or before June 21, 2010.  (Exhibit 2, Gaither Depo. p. 108–09; Exhibit 10, John Clayborn Affidavit, at ¶ 4.)  Those claims, therefore, are time-barred and must be dismissed.

### B. Gaither Cannot Establish a *Prima Facie* Case of Discrimination

Gaither admitted that she has no direct evidence of discrimination on the part of AFMC.  (Exhibit 2, Gaither Depo., p 167.)  Under Title VII, , therefore, Gaither has the initial burden to establish a *prima facie* case of unlawful discrimination pursuant to the familiar *McDonnell Douglas* burden-shifting framework.  *Turner v. Honeywell Fed. Mfg. & Techs., LLC*, 336 F.3d 716, 720 (8th Cir. 2003).  Absent direct evidence of discrimination, in the failure-to-promote context, to establish a *prima facie* case of discrimination, Gaither must show that:

(1)  she is a member of a protected group;

(2)  she was qualified and applied for an available position;

(3)  she was rejected; and

(4)  employees similarly situated but not part of the protected group were promoted instead.

*Ross v. Kansas City Power & Light Co.*, 293 F.3d 1041, 1046 (8th Cir. 2002) (citing *Shannon v. Ford Motor Co.*, 72 F.3d 678, 682 (8th Cir. 1996)).  AFMC concedes that Gaither was a member of a protected group and that she was not selected for the positions to which she applied for promotion.

With regard to some or all of the positions Gaither applied for, however, Gaither cannot establish the second and fourth elements of her *prima facie* case. First, Gaither was not qualified for the Program Coordinator and Computer Specialist positions. Second, the employees selected to fill the positions Gaither applied for, arguably, were not similarly situated to Gaither, because they were more qualified for the positions. Gaither, therefore, cannot establish her *prima facie* case and the Court should grant AFMC's Motion for Summary Judgment.

1.   Gaither was not qualified for the Program Coordinator positions to which she applied.

The Program Coordinator, HIT position required a minimum of three (3) years experience in health information technology and electronic health records.  (Exhibit 9, HIT Program Coordinator Job Description.)  Gaither admitted that she did not meet that minimum qualification requirement.  (Exhibit 2, Gaither Depo., p. 94–95, 122–23.)  The Senior Program Coordinator, HITArkansas position required a Bachelor's degree and three (3) years experience in health care at a professional level, in addition to the Program Coordinator position requirements. (Exhibit 19, Senior Program Coordinator, HITArkansas Job Description.)   Gaither also admitted that she did not meet the minimum qualification requirement for the Senior Program Coordinator position. (Exhibit 2, Gaither Depo., p. 127–28.)   Because Gaither did not meet the minimum qualifications for the Program Coordinator or Senior Program Coordinator positions, she cannot establish a *prima facie* case with regard to AFMC's failure to promote her to those positions when she applied.  The Court, therefore, should grant AFMC's Motion for Summary Judgment with regard to the Program Coordinator and Senior Program Coordinator positions.

    2.    <u>Gaither was not qualified for the Computer Support Specialist positions to which she applied.</u>

The Computer Support Specialist position required a minimum of "Two (2) years in a computer support role including the following areas:   Windows Server and environment experience; Network Cabling, all hardware, HUB and Router experience, disk mapping; Proficient in Windows OS and applications, proficient in MS Office." (Exhibit 16, Computer Support Specialist Job Description.)   Gaither admitted that she had no experience in network cabling or hardware, HUB and router, or disk mapping, and that her proficiency in Windows operating systems was lacking.  (Exhibit 2, Gaither Depo., p. 100–03.)   Gaither, therefore, did not meet the minimum qualifications for the Computer Support Specialist position.   Because Gaither did not meet the minimum qualifications for the Computer Support Specialist position, she cannot establish a *prima facie* case with regard to AFMC's failure to promote her to that position when she applied.  The Court, therefore, should grant AFMC's Motion for Summary Judgment with regard to the Computer Support Specialist position.

    3.    <u>The individuals selected to fill the positions that Gaither applied for were not similarly situated to Gaither.</u>

The individuals selected to fill the positions that Gaither applied for, arguably, were not similarly situated to Gaither, as each individual had superior qualifications for the position.  Brittany Shachmut's experience as a Program Assistant with AFMC was superior and more relevant to the Program Coordinator position than Gaither's experience as a bus operator and receptionist.  (Exhibit 10, John Clayborn Affidavit, at ¶ 3.)  Shachmut, therefore, was not similarly situated to Gaither.

Gregory Green's eleven (11) years experience as an accounts payable analyst at Verizon Wireless was more relevant to the Program Assistant position than Gaither's

experience as a bus operator and receptionist.  (*Id.* at ¶ 4.)  Green, a 56-year-old black male, was also a member of Gaither's protected groups.  (*Id.*)   Jody Sonnier's experience as a certified nursing assistant in a nursing home was more relevant to the Program Assistant position working with AMFC's nursing home team than Gaither's experience as a bus operator and receptionist.  (*Id.*)  Rebecca Perez's eight (8) years experience in several administrative positions at Oasis Outsourcing was more relevant to the Program Assistant position than Gaither's experience as a bus operator and receptionist.  (*Id.* at ¶ 5.)  In addition, Perez scored significantly higher on the Microsoft Excel test than Gaither.  (*Id.*)  Green, Sonnier, and Perez, arguably, therefore, were not similarly situated to Gaither.

Samuel Moix's knowledge of modern computer network systems and his more recent experience as a computer support employee at Mayflower School District were superior to Gaither's computer-entry experience from the 1980's and 1990's with relation to the Computer Support Specialist position.   (Exhibit 10, John Clayborn Affidavit, at ¶ 6.)  Brent Carver's knowledge and experience regarding modern computer network systems was far superior to Gaither's, not to mention his Microsoft certifications and recent experience at Home Bancshares and Evolvent Technologies.    (*Id.* at ¶ 8.)  Moix and Carver, arguably, therefore, were not similarly situated to Gaither.

Finally, Jennifer Pagan's experience as a Research Assistant with the Arkansas Center for Health Improvement, her experience in establishing the Arkansas Office of Health Information Technology, and her completion of a bachelor's degree, made her a superior candidate than Gaither for the Senior Program Coordinator – HITArkansas position.  (*Id.* at ¶ 7.)  Pagan, arguably, therefore, was not similarly situated to Gaither.

Because the individuals selected to fill the positions that Gaither applied for were, arguably, not similarly situated to Gaither, Gaither cannot establish a *prima facie* case of discrimination against AFMC.   The Court, therefore, should grant AFMC's Motion for Summary Judgment.

### C.   Gaither cannot establish a *Prima Facie* Case of Retaliation

Gaither alleges that she was retaliated against when she wasn't interviewed for or selected to fill the Senior Program Coordinator – HITArkansas position that was filled by Jennifer Pagan on August 11, 2011, because she had previously filed a charge of discrimination with the EEOC.   (Exhibit 2, Gaither Depo., p. 118–119).   To establish a *prima facie* case for Title VII retaliation, Gaither must show:

(1) that she engaged in protected activity;

(2) she suffered an adverse employment action; and

(3) a causal connection between the two exists.

*Jones v. Bd. of Trs.*, 2013 U.S. Dist. LEXIS 91207 (E.D. Ark. June 28, 2013) (citing *Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 880 (8th Cir. 2005)).   AFMC concedes that Gaither engaged in protected activity when she filed her first charge of discrimination with the EEOC.

Gaither, first of all, may not be able to show that she suffered an adverse job action.   Secondly, Gaither cannot show that a causal connection existed between the filing of her EEOC charge and AFMC's selection of more qualified candidates for the positions that Gaither applied for.

In order to establish that she suffered an adverse job action, arguably, Gaither must show that she possessed the basic skills necessary for the performance of the job. *See, e.g., Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 468–469 (8th Cir. 2011) (citing

*Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 92 (2d Cir. 2001) ("[T]he qualification necessary to shift the burden to defendant for an explanation of the adverse job action is minimal; plaintiff must show only that [s]he possesses the basic skills necessary for performance of [the] job.")).  Gaither admitted, however, that she did not meet the minimum qualifications of the Senior Program Coordinator – HITArkansas position, or the position to which she originally applied, Program Coordinator – HIT. (Exhibit 2, Gaither Depo., p. 122–23, 127–28; Exhibit 18, Program Coordinator – HIT Job Description; Exhibit 19, Senior Program Coordinator, HITArkansas Job Description.)  AFMC's selection of a qualified candidate in favor of Gaither, who did not meet the minimum qualifications of the job, would, therefore, not constitute an adverse job action.  If Gaither cannot establish that she suffered an adverse job action, her claim of retaliation should be dismissed.

Gaither appears to assert that a causal connection exists between the filing of her first EEOC Charge against AFMC and the fact that she was not interviewed for the second Program Coordinator position to which she had applied.  (Exhibit 2, Gaither Depo., p. 118–19.)  Gaither admitted, however, that she had been interviewed for the position in the past year or so by the same people doing the interviewing and hiring for the second Program Coordinator opening.  (*Id.* at 125–26.)  The fact that Gaither filed a charge of discrimination with the Equal Employment Opportunity Commission played no role in the selection of candidates for the positions that Gaither applied for.  (Exhibit 10, John Clayborn Affidavit, at ¶ 9.)  The candidates were selected based on their qualifications, including education and experience, relevant to the position.  (*Id.*)  No

causal connection existed and, therefore, Gaither claim of retaliation should be dismissed.

### D. AFMC had a Legitimate, Non-discriminatory Reason for Selecting the Individuals to Fill the Open Positions

Assuming, *arguendo*, that Gaither could establish a *prima facie* case of discrimination or retaliation, "the burden of production shifts to [AFMC], who must rebut the presumption of discrimination with evidence of a legitimate, nondiscriminatory reason for [Gaither]'s rejection." *Ross*, 293 F.3d at 1046 (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254, 67 L. Ed. 2d 207, 101 S. Ct. 1089 (1981)). AFMC, pursuant to its Equal Employment Opportunity Non-Discrimination and Recruiting Policies, selected the most qualified candidates to fill the positions. (Exhibit 5, EEO Policy; Exhibit 6, Recruiting Policy; Exhibit 10, John Clayborn Affidavit, at ¶¶ 3– 9; *see* §IV(B)(3) *infra*.)

The Eighth Circuit has clearly enunciated that discrimination laws are "not intended to be used as a means for reviewing the propriety of a business decision" by an employer. *Jorgensen v. Modern Woodmen of Am.*, 761 F.2d 502, 505 (8th Cir. 1985) (referring to the ADEA) (citing *Kephart v. Institute of Gas Tech*, 630 F.2d 1217, 1223 (7th Cir. 1980), *cert. denied*, 450 U.S. 959 (1981)); *see also Slathar v. Sather Trucking Corp.*, 78 F.3d 415, 418 (8th Cir. 1996). "[A]n employer may exercise business judgment in making personnel decisions." *Walker v. AT&T Techs.*, 995 F.2d 846, 849 (8th Cir. 1993). "[C]ourts have no business telling [employers] how to make personnel decisions, which may be objectively or subjectively based." *Neufeld v. Searle Labs.*, 884 F.2d 335, 340 (8th Cir. 1989); *see also Stemmons v. Missouri Dep't of Corrections*, 82 F.3d 817, 819 (8th Cir. 1996).

The courts do "not sit as a 'super-personnel department' with the power to second-guess employers' business decisions." *Russell v. TG Missouri Corp.*, 340 F.3d 735, 746 (8th Cir. 2003) (citing *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991)); *Herrero v. St. Louis Univ. Hosp.,* 109 F.3d 481, 485 (8th Cir. 1997) (quoting *Hutson*, 63 F.3d at 781); *see also Swoboda v. Cent. Ark. Dev. Council*, 2013 U.S. Dist. LEXIS 80375 (W.D. Ark. June 7, 2013) (citing *Wilking v. County of Ramsey*, 153 F.3d 869, 873 (8th Cir. 1998)); *Girten v. McRentals, Inc.*, 337 F.3d 979, 982–83 (8th Cir. 2003); *Edmund v. Mid-American Energy Co.,* 299 F.3d 679, 686 (8th Cir. 2002). Instead of being "concerned with the correctness or wisdom of the reason" given for an employer's decision, the Court must examine whether the incident as reported by the employer is the real reason for its decision, as opposed to a pretext for discrimination. *Gill v. Reorganized Sch. Dist. R-6*, 32 F.3d 376, 379 (8th Cir. Mo. 1994) (quoting *Crimm v. Missouri Pac. R. Co.*, 750 F.2d 703, 712 (8th Cir. 1984)).  The Court, therefore, is not permitted to correct a decision that it deems unwise if the employer provides an honest, non-discriminatory explanation for its behavior.  *Russell*, 340 F.3d at 746 (citing *Elrod*, 939 F.2d at 1470).

AFMC has provided an honest, non-discriminatory explanation for not selecting Gaither for promotion—Gaither was not the most qualified candidate.  (*See* §IV(B)(3), *infra*.)  Gaither's education and experience simply did not match up with the competing candidates.  The Court, therefore, should grant AMFC's Motion for Summary Judgment.

### E.   Gaither Has No Evidence that Discrimination was the True Reason for AFMC's Decision to Select Other Candidates

Since AFMC articulated a legitimate, non-discriminatory reason for failing to promote Gaither, i.e., that Gaither was not the most qualified candidate, Gaither "may

win by proffering evidence that [AFMC]'s reason was a pretext for intentional discrimination." *Ross*, 293 F.3d at 1046 (citing *Shannon v. Ford Motor Co.*, 72 F.3d 678, 682 (8th Cir. 1996)); *see also St. Mary's Honor Ctr.*, 509 U.S. at 506–07). "[P]roof that the defendant's articulated explanation is false or incorrect does not, standing alone, entitle the plaintiff to judgment; instead, the showing must be that the explanation is a pretext for discrimination." *Hutson v. McDonnell Douglas Corp.*, 63 F.3d 771, 777 (8th Cir. 1995) (citing *St. Mary's Honor Ctr.*, 509 U.S. at 506–07).

A reason cannot be proven to be a "pretext for discrimination unless it is shown *both* that [1] the reason was false *and* [2] that discrimination was the *real reason*" for the employer's actions. *St. Mary's Honor Ctr.*, 509 U.S. at 515 (emphasis in original). It is not enough to disbelieve the employer; the fact finder must be able to believe the employee's explanation of intentional discrimination. *Id.* at 520–25.

Mere suspicion, conjecture or allegations that the asserted reason is a pretext and the employer's true motivation was discrimination will not, without more, defeat the employer's motion for summary judgment. *Aucutt v. Six Flags Over Mid-America*, 85 F.3d 1311, 1317 (8th Cir. 1996); *Nelson v. Boatmen's Bancshares, Inc.,* 26 F.3d 796, 800 (8th Cir. 1994); *Holley v. Sanyo Mfg., Inc.*, 771 F.2d 1161, 1168 (8th Cir. 1985). Where unsubstantiated allegations, speculation, subjective perceptions, and conjecture are the basis for an inference of discrimination, summary judgment is appropriate. *Godfrey v. Pulitzer Pub. Co.*, 276 F.3d 405, 412 (8th Cir. 2002); *Habib v. Nations Bank*, 279 F.3d 563, 567 (8th Cir. 2001); *Kunferman v. Ford Motor Co.*, 112 F.3d 962, 966 (8th Cir. 1997); *Price v. S. B. Power Tool*, 75 F.3d 362, 366 (8th Cir. 1996); *Holley v. Sanyo Mfg., Inc.*, 771 F.2d 1161, 1168 (8th Cir. 1985).

Mere assertions of discrimination by Gaither, therefore, will not suffice to overcome the burden required.  As stated earlier, once a motion for summary judgment points out the absence of proof regarding an essential element of the non-movant's case, the burden shifts to the non-movant to offer probative evidence that would permit a finding in her favor on more than mere speculation, conjecture, or fantasy.  *Gregory v. City of Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992), *cert. denied*, 507 U.S. 913 (1993).

In *Wright v. Wyandotte County Sheriff's Dep't*, the district court stated that "other than her own subjective feelings, plaintiff offers no evidence suggesting that defendant's actions were grounded in racial bias," and such conjecture does not warrant denial of summary judgment.  963 F. Supp. 1029, 1036-37 (D. Kan. 1997) (citing *Branson v. Price River Coal Co.*, 853 F.2d 768, 772 (10th Cir. 1988)).  Thus, there must be some evidence that discrimination was a motivating factor in an adverse employment decision.  If that evidence is absent—as it is here—then a summary judgment motion must be granted.

Gaither has no evidence of pretext—no evidence that the true reason for AFMC's action is unlawful discrimination.  Indeed, Gaither has proffered absolutely no evidence from which a reasonable jury could infer that unlawful discrimination was the true reason for AFMC's decision to promote or hire other candidates.  *See Maxfield v. Cintas Corp. No. 2*, 427 F.3d 544, 551 (8th Cir. 2005) (district court properly granted summary judgment in Title VII race discrimination case because, even if employer did not convey the true reason for plaintiff's discharge, plaintiff had produced no evidence from which a jury could conclude that the real reason was racial bias).  Rather, the evidence only

suggests that AFMC's legitimate, nondiscriminatory reason is true—that Gaither was not selected for promotion because she was not the most qualified candidate.

Gaither alleges that AFMC Management preferred "young Caucasian" candidates for the positions that Gaither applied for. (Exhibit 2, Gaither Depo., at p. 152.) Gaither, however, admitted that she had no evidence that the decision to promote or hire other candidates had anything to do with her race, color, or age. (*Id.* at 142–43.) "[T]o support a finding of pretext, [Gaither] must show that [AFMC] hired a **less qualified** applicant." *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 793 (8th Cir. Ark. 2011) (citing *Kincaid v. City of Omaha*, 378 F.3d 799, 805 (8th Cir. 2004); *Duffy v. Wolle*, 123 F.3d 1026, 1037 (8th Cir. 1997)) (emphasis added). Gaither was not even aware of the qualifications of the candidates selected to fill the positions she applied for. (Exhibit 2, Gaither Depo., p. 97, 99 (Shachmut); 104–05 (Moix); 108 (Sonnier); 111 (Perez); 124 (Pagan)). In fact, Gaither admitted that she was **not more qualified** than any of the candidates selected to the positions she applied for. (*Id.* at 128–30, 133–37.) When asked if was more qualified than any of the persons that were selected, Gaither responded, "Just as." (*Id.* at 128.)

"Absent discrimination, employers are free to exercise their judgment in making personnel decisions." *Barber*, 656 F.3d at 793 (citing *Duffy*, 123 F.3d at 1038 ("Identifying those strengths that constitute the best qualified applicant is . . . a role best left to employers …."); *Lidge-Myrtil v. Deere & Co.*, 49 F.3d 1308, 1311 (8th Cir. 1995); *Tusing v. Des Moines Indep. Cmty. Sch. Dist.*, 639 F.3d 507, 517 (8th Cir. 2011)). AFMC identified and selected the most qualified candidate to each position that Gaither

applied for.   AFMC's determination that Gaither was not the most qualified candidate does not constitute employment discrimination.

Gaither, as she admitted, has no evidence of discrimination or retaliation. Gaither's suspicion, conjecture, and allegations of discrimination are insufficient to survive summary judgment.   *Aucutt v. Six Flags Over Mid-America*, 85 F.3d 1311, 1317 (8th Cir. 1996); *Nelson v. Boatmen's Bancshares, Inc.,* 26 F.3d 796, 800 (8th Cir. 1994); *Holley v. Sanyo Mfg., Inc.*, 771 F.2d 1161, 1168 (8th Cir. 1985).   AFMC's Motion for Summary Judgment, therefore, should be granted.

### F.   Gaither's Age Discrimination Allegations are Analyzed Under the Same Standards as her Title VII Claims

Gaither did not plead a claim under the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq. (ADEA) in her Complaint(s).   In her first Complaint, however, Gaither did allege that she was discriminated against based on her age, but only referenced Title VII, which does not provide protection from age discrimination. First Complaint at ¶ 8.  Plaintiff's age discrimination claims, therefore, were not properly pled and should be dismissed.

Had Gaither properly pled her age discrimination allegations, summary judgment in favor of AFMC would still be appropriate.   Similar to claims of race discrimination, when a plaintiff "has no direct evidence of [age] discrimination, [her] claims are analyzed under the familiar burden-shifting scheme of *McDonnell Douglas Corp* …."   *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 855 (8th Cir. Ark. 2012) (citing *Haigh v. Gelita USA, Inc.*, 632 F.3d 464, 468 (8th Cir. 2011)).   As clearly stated above, Gaither's claims of discrimination fail under the *McDonnell Douglas* burden-shifting framework. "Furthermore, to succeed in proving age discrimination a plaintiff 'must show, by a

preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action.'"  *Parker v. BHC Pinnacle Pointe Hosp., Inc.*, 2013 U.S. Dist. LEXIS 1372, 9–11 (E.D. Ark. Jan. 4, 2013) (citing *Gibson*, 670 F.3d at 856). Gaither has no evidence that age (or race or color or retaliation, for that matter) had **anything** to do with AFMC's selection of more qualified candidates.  (Exhibit 2, Gaither Depo., p. 142 (Q:  what proof do you have that AFMC failed to promote you because of your race, color, or age?  A:  I don't have any proof.  Q:  So you have no evidence, no proof?  A:  Not that I can think of, no.))  Gaither cannot prove that AFMC's selection of other candidates had anything to do with her age, so her claims must fail.

It is important to note, in addition, that Gaither was hired only months prior to her promotion applications.  (Exhibit 8, Internal Transfer Form; Exhibit 2, Gaither Depo., p. 93–94.)  Although not fatal to her claim, the fact that there is "no evidence that [AFMC] developed a discriminatory attitude toward [Gaither's] age after [s]he was hired when [s]he was well above the protected age under the ADEA" certainly weighs against her case.  *Haigh*, 632 F.3d at 468.  The Court should, therefore, grant AFMC's Motion for Summary Judgment.

## V.  CONCLUSION

The Court should grant AFMC's Motion for Summary Judgment, dismiss Gaither's Complaints in their entirety, enter a take-nothing judgment against her, and grant AFMC all other proper and just relief.  Gaither has absolutely no proof whatsoever of race, color, or age discrimination or retaliation beyond her rank conjecture and speculation.   No reasonable jury could infer race, color, or age discrimination or retaliation based upon this summary judgment record.   If the Court were to deny

AFMC's Motion for Summary Judgment, it would be asking a reasonable jury to do that which a reasonable jury cannot and should not do—infer discrimination from nothing.

Respectfully submitted,

Carolyn B. Witherspoon (Ark. Bar #78172)
Email: cspoon@cgwg.com
J. E. Jess Sweere (Ark. Bar #05285)
Email: jsweere@cgwg.com
Cross, Gunter, Witherspoon & Galchus, P.C.
500 President Clinton Avenue, Suite 200
Little Rock, Arkansas 72201
Phone: (501) 371-9999
Fax: (501) 371-0035

By: */s/ J. E. Jess Sweere*
        J. E. Jess Sweere

## <u>CERTIFICATE OF SERVICE</u>

I do hereby certify that on July 18, 2013, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which shall send notification of such filing to the following:

Michael C. Angel
Law Offices of Michael C. Angel
P. O. Box 23210
Little Rock, AR 72221

*/s/ J. E. Jess Sweere*