IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

CLARA C. GAITHER                                                          PLAINTIFF

v.                              Case No. 4:11-cv-00576-KGB

ARKANSAS FOUNDATION FOR
MEDICAL CARE                                                             DEFENDANT

*Related Case:*

CLARA C. GAITHER                                                          PLAINTIFF

v.                              Case No. 4:13-cv-00031-KGB

ARKANSAS FOUNDATION FOR
MEDICAL CARE                                                             DEFENDANT

<u>OPINION AND ORDER</u>

Plaintiff Clara C. Gaither filed three lawsuits against her former employer Arkansas

Foundation for Medical Care ("AFMC").  Ms. Gaither filed Case No. 4:11-cv-00576 and Case

No. 4:12-cv-00373.  The Court entered an order on September 11, 2012 consolidating Case No.

4:12-cv-00037 into this case (Case No. 4:11-cv-00576 (Dkt. No. 39)).[1]   Ms. Gaither

subsequently filed a third lawsuit in Case No. 4:13-cv-00031, which was transferred to this

docket because it is related to Case No. 4:11-cv-00576 and Case No. 4:12-cv-00373 (Case No.

4:13-cv-00031-KGB (Dkt. No. 11)).

Before the Court is the motion for summary judgment filed by defendant AFMC in Case

No. 4:11-cv-00576(Dkt. No. 71).  Plaintiff Ms. Gaither has responded (Dkt. No.  74), and AFMC

has replied (Dkt. No. 76).  For the following reasons, AFMC's motion for summary judgment is

granted as to all of Ms. Gaither's claims.

---

[1]  The Court's references to Docket Numbers as cited in this Order refer to filings in Case
No. 4:11-cv-00576, unless otherwise stated.

Also before the Court is a motion to dismiss filed by defendant AFMC in Case No. 4:13-cv-00031 (Case No. 4:13-cv-00031, Dkt. No. 9).  Ms. Gather failed to respond to the pending motion.  For good cause shown, the Court grants AFMC's motion and dismisses Ms. Gaither's claims raised in her third complaint (Case No. 4:13-cv-00031, Dkt. No. 9).

## I.    FACTUAL BACKGROUND[2]

Ms. Gaither, a 56 year-old African American female, began her employment with AFMC on September 14, 2009, after accepting an offer for a receptionist position.  Ms. Gaither held the receptionist position until her employment was terminated on April 30, 2012.[3]

Ms. Gaither obtained an associate degree in computer science in 1985.  Prior to working for AFMC, Ms. Gaither worked as a bus operator for six years.  Ms. Gaither has submitted an affidavit stating that, at the time of her hiring, she possessed over 10 years of experience in computer operations from working at Electronic Data Systems and Blue Cross Blue Shield (Dkt. No. 74, Exhibit 5).  Ms. Gaither testified in her deposition that this experience dates back to the mid-1990s.

During her employment with AFMC, Ms. Gaither applied for promotion to several different positions; she was denied on each occasion.  AFMC states that Ms. Gaither was not selected for these promotions because she was not the most qualified applicant.

On January 15, 2010, Ms. Gaither applied for a position as Health Information Technology ("HIT") Program Coordinator ("Program Coordinator").  Ms. Gaither interviewed for the position on April 22, 2010, but was not selected.  Instead, AFMC promoted to the position Brittany Shachmut, a 22 year-old Caucasian female.  Ms. Shachmut was a Program

---

[2] These facts are undisputed unless otherwise specifically noted.

[3] Ms. Gaither was terminated after she exhausted all of her available leave time and informed AFMC that she would not be able to return to work.  Ms. Gaither has not alleged any discrimination in her termination from AFMC.

Assistant with AFMC prior to receiving the promotion.  AFMC states that Ms. Shachmut was promoted effective May 24, 2010.  Ms. Gaither contends that she was promoted effective March 24, 2010, a month before Ms. Gaither's interview.

According to the affidavit of John Clayborn, the Director of Human Resources at AFMC since February 16, 2010, Ms. Shachmut was selected because of her knowledge and experience in performing similar duties as a Program Assistant at AFMC (Clayborn Aff., Dkt. No. 71-2, at 17).  The position of HIT Program Coordinator required an individual to have three years of experience in health care and experience in health information technology and electronic health records ("EHR").  Ms. Gaither conceded in her deposition she lacked experience in HIT or EHR.  Despite this, Ms. Gaither asserts in her statement of disputed facts that she was more experienced than Ms. Shachmut because Ms. Shachmut had only six months of experience with AFMC, while Ms. Gaither had an associate's degree in computer science and over ten years of experience in data entry in the healthcare industry.  Ms. Gaither contends in her affidavit that Ms. Shachmut was hired as a Program Assistant the same week she was hired as a receptionist.

On April 27, 2010, Ms. Gaither applied for one of two open positions as Program Assistant at AFMC.  Ms. Gaither was interviewed for the position but not selected.  AFMC selected two external applicants, Gregory Green, a 56 year-old African American male, and Jody Sonnier, a 29 year-old Caucasian female, effective June 21, 2010.  According to Mr. Clayborn, Mr. Green had a bachelor's degree and 11 years of experience as an accounts-payable analyst, and Ms. Sonnier had experience as a certified nursing assistant ("CNA") in a nursing home.  Ms. Gaither maintains in her affidavit that Ms. Sonnier's only experience was as a CNA and asserts in her statement of disputed facts that she was more qualified than Ms. Sonnier (Dkt. No. 74 at 8; Dkt. No. 75, ¶ 3).

On October 1, 2010, Ms. Gaither applied for another Program Assistant position at AFMC.  AFMC granted Ms. Gaither an interview, but she was not selected.  AFMC hired Rebecca Perez, a 28 year-old female, to fill the position, effective November 9, 2010.  The parties dispute Ms. Perez's race.  AFMC states that Ms. Perez is Hispanic.  Ms. Gaither contends that Ms. Perez is Caucasian.  According to Mr. Clayborn's affidavit, Ms. Perez had eight years of experience in several administrative positions at Oasis Outsourcing.  In addition, AFMC states that, because the Program Assistant position required the regular use of Microsoft Excel spreadsheets, applicants were tested in the basics of Microsoft Excel, and Ms. Perez scored significantly higher than Ms. Gaither.  Ms. Gaither responds that AFMC did not test for Microsoft Excel for the Program Assistant positions to which she applied in April 27, 2010, which were filled by Mr. Green and Ms. Sonnier (Dkt. No. 74, Exhibit 5).

On October 14, 2010, Ms. Gaither applied for a position as Computer Support Specialist at AFMC.  Ms. Gaither was interviewed but not selected.  AFMC selected Mr. Moix, a 25 year-old Caucasian male, for the Computer Support Specialist position effective November 9, 2010. According to Mr. Clayborn, Mr. Moix had recent experience as a computer support employee at Mayflower School District.  Ms. Gaither conceded in her deposition and in her affidavit produced in support of her response to AFMC's motion that she did not possess the specific qualifications for the computer system being utilized in the Computer Support Specialist positions (Gaither Depo., at 100-03, Dkt. No. 72-1, at 29-32; Dkt. No. 74, at 9).  However, she asserts that it has been her experience "that a certain level of on-the-job training is customary in these positions."  (Dkt. No. 74 at 9).

On December 27, 2010, Ms. Gaither filed her first charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"), alleging that she was denied

promotions between January and November 2010, due to her race and age, in favor of younger, Caucasian applicants.[4]  The EEOC dismissed the charge on May 23, 2011, and issued a right-to-sue letter.

On June 30, 2011, Ms. Gaither applied for another position as Program Coordinator.  The open position was canceled before Ms. Gaither was interviewed.  The open position was restructured to a new position, Senior Program Coordinator, HIT Arkansas ("Senior Program Coordinator"), which required as a minimum qualification a bachelor's degree.  The new Senior Program Coordinator position was posted on July 19, 2010.  Mr. Clayborn states that the Program Coordinator position was canceled because AFMC management determined that the position should be restructured to a higher-level position.  Ms. Gaither, who does not possess a bachelor's degree, did not apply for the Senior Program Coordinator position.  AFMC selected Jennifer Pagan, a 27 year-old Caucasian female with a bachelor's degree, for the Senior Program Coordinator position, effective August 11, 2011.  Mr. Clayborn explains that Ms. Pagan's experience as a Research Assistant with the Arkansas Center for Health Improvement and her experience establishing the Arkansas Office of Health Information Technology made her a superior candidate for the position.  Ms. Gaither claims that the qualifications for the position were changed the same day Ms. Pagan was interviewed (Dkt. No. 74 at 9).

Ms. Gaither filed a second charge with the EEOC on November 1, 2011, alleging that she was denied the promotion for the Program Coordinator position, which was restructured into the Senior Program Coordinator position, because of her race and in retaliation for filing the previous charge of discrimination.  The EEOC dismissed the charge on March 14, 2012, and issued a right-to-sue letter.

---

[4] Ms. Gaither's EEOC complaint acknowledged that one external applicant, presumably Mr. Green, was not younger or Caucasian.  (Dkt. No. 71-3, at 25).

On November 30, 2011, Ms. Gaither again applied for a position as Computer Support Specialist. Ms. Gaither was not selected for the position. An external applicant, Brent Carver, a 29 year-old Caucasian male, was hired for the position effective January 24, 2012. Mr. Clayborn states that Mr. Carver was a Microsoft Certified Professional and Microsoft Certified Technology Specialist with very recent experience maintaining computer networks and equipment in the United States Air Force, at Home Bancshares in Conway, Arkansas, and at Evolvent Technologies in Jacksonville, Arkansas. According to Mr. Clayborn, Mr. Carver's knowledge and experience regarding modern computer network systems was far superior to Ms. Gaither's. Ms. Gaither's third complaint, Case No. 4:13-cv-00031, addresses this second Computer Support Specialist position. The third complaint alleges discrimination on January 20, 2012, but an accompanying EEOC charge is not included with the third complaint. Ms. Gaither does attach a third EEOC right-to-sue letter. AFMC has moved to dismiss Ms. Gaither's third complaint (Case No. 4:13-cv-00031, Dkt. No. 9).

## II.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if the evidence, when viewed in the light most favorable to the nonmoving party, shows that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). However, parties opposing a summary judgment motion may not rest merely upon the allegations in their pleadings. *Buford v. Tremayne*, 747 F.2d 445, 447 (8th Cir. 1984). The initial burden is on the moving party to demonstrate the absence of a genuine issue of material fact. *Id.* at 323. The burden then shifts to the nonmoving party to establish there is a genuine issue to be determined at trial. *Prudential Ins. Co. v. Hinkel*, 121 F.3d 364, 366 (8th Cir. 1997). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be

drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). A factual dispute is genuine if the evidence could cause a reasonable jury to return a verdict for either party. *Miner v. Local 373*, 513 F.3d 854, 860 (8th Cir. 2008). "The mere existence of a factual dispute is insufficient alone to bar summary judgment; rather, the dispute must be outcome determinative under prevailing law." *Celotex*, 477 U.S. at 331.

"There is no 'discrimination case exception' to the application of summary judgment, which is a useful pretrial tool to determine whether any case, including one alleging discrimination, merits a trial." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc).

### III.   ANALYSIS

#### A.   Timeliness

As a preliminary point, the Court must address the timeliness of Ms. Gaither's first two charges of discrimination filed with the EEOC. "In order to pursue a Title VII action, plaintiffs generally must file an administrative charge with the EEOC within 180 days after the alleged unlawful employment practice occurred." *Bissada v. Arkansas Children's Hosp.*, 639 F.3d 825, 830 (8th Cir. 2011), *reh'g denied* (June 16, 2011) (citing § 2000e–5(e)(1)). Ms. Gaither filed her first EEOC charge on December 27, 2010. Accordingly, any claims based on events allegedly occurring prior to June 30, 2010 are time-barred.

AFMC challenges the timeliness of Ms. Gaither's claim regarding the first Program Coordinator position, which was filled by Ms. Shachmut, and the first Program Assistant positions, which were filled by Mr. Green and Ms. Sonnier. AFMC states that Ms. Gaither was notified on or before May 24, 2010, that she was not selected to fill the Program Coordinator position filled by Ms. Shachmut and that she was notified on or before June 21, 2010, that she was not selected to fill the Program Assistant positions filled by Mr. Green and Ms. Sonnier.

Ms. Gaither's complaint confirms these dates (Dkt. No. 2 at 4).   Ms. Gaither does not dispute these facts, and she offers no response to AFMC's challenge as to the timeliness of these claims.

The Court concludes that Ms. Gaither's claims based on AFMC's alleged failure to promote her to the HIT Program Coordinator position filled by Ms. Shachmut and the Program Assistant positions filled by Mr. Green and Ms. Sonnier are time-barred.   Ms. Gaither did not file an administrative charge with the EEOC within 180 days after these alleged unlawful employment practices.   The Court recognizes that the Supreme Court has stated that "this time period for filing a charge is subject to equitable doctrines such as tolling or estoppel . . . . Courts may evaluate whether it would be proper to apply such doctrines, although they are to be applied sparingly."   *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002) (citations omitted). Ms. Gaither does not argue for the application of any equitable doctrines.   Accordingly, the Court need not consider these equitable doctrines.

Therefore, AFMC is entitled to summary judgment on Ms. Gaither's claims based on an alleged failure to promote her to the HIT Program Coordinator position filled by Ms. Shachmut and the Program Assistant positions filled by Mr. Green and Ms. Sonnier.

### B.        Race Discrimination Claims

Ms. Gaither can establish a *prima facie* claim of race discrimination either by providing direct evidence of discrimination or by creating an inference of unlawful discrimination under the three-step analysis set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).   *Bone v. G4S Youth Services, LLC*, 686 F.3d 948, 953 (8th Cir. 2012).   Ms. Gaither acknowledges she has no direct evidence of discrimination.   Therefore, the Court must consider her claims under the *McDonnell Douglas* burden shifting framework.

Under the *McDonnell Douglas* framework, "the plaintiff bears the burden of establishing a *prima facie* case of discrimination." *McGinnis v. Union Pac. R.R. Co.*, 496 F.3d 868, 873 (8th Cir. 2007). To establish a *prima facie* case of race discrimination in a failure-to-promote claim, a plaintiff must show that "(1) she is a member of a protected group; (2) she was qualified and applied for a promotion to an available position; (3) she was rejected; and (4) similarly situated employees, not part of the protected group, were promoted instead." *Jackson v. United Parcel Serv., Inc.*, 643 F.3d 1081, 1086 (8th Cir. 2011) *cert. denied*, 132 S. Ct. 1075, 181 L. Ed. 2d 740 (2012) (internal quotations and citations omitted). AFMC contends that Ms. Gaither cannot establish the second and fourth elements.

"To satisfy the second element of a *prima facie* failure-to-promote case, a plaintiff must show that [she] is at least 'minimally qualified' for the promotion at issue." *Bennett v. Nucor Corp.*, 656 F.3d 802, 820 (8th Cir. 2011) *cert. denied*, 132 S. Ct. 1807 (2012) and *cert. denied*, 132 S. Ct. 1861 (2012) (citation omitted). "Conclusory assertions that the plaintiff was qualified are insufficient." *Id.* (citation omitted).

"A plaintiff can satisfy the fourth part of the *prima facie* case in a variety of ways, such as by showing more-favorable treatment of similarly-situated employees who are not in the protected class, or biased comments by a decisionmaker." *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1019 (8th Cir. 2011) (citing *Lewis v. Heartland Inns of Am., L.L.C.*, 591 F.3d 1033, 1039-40 (8th Cir. 2010)). The Eighth Circuit "has two lines of cases on the standard to determine whether employees are 'similarly situated' at the *prima facie* stage of the *McDonnell Douglas* test." *Id.* (quoting *Wimbley v. Cashion,* 588 F.3d 959, 962 (8th Cir. 2009)). The first line of cases "sets a low threshold, requiring only that the employees are involved in or accused of the same or similar conduct and are disciplined in different ways." *Id.* (quotation omitted). The other line of

cases "more rigorously requires that the employees be similarly situated in all respects." *Id.* (quotation omitted).  The Eighth Circuit has recently confirmed that the appropriate inquiry is whether the employees are similarly situated in all respects.  *See Chappell v. Bilco Co.*, 675 F.3d 1110, 1118-19 (8th Cir. 2012).

If a plaintiff makes out a *prima facie* case, she creates a presumption of unlawful discrimination, and the burden shifts to the defendant to come forward with evidence of a legitimate nondiscriminatory reason for its actions.  *McGinnis*, 496 F.3d at 873.  "If the defendant articulates such a reason, the burden returns to the plaintiff to show the defendant's proffered reason is pretextual." *Id.*

At issue here is whether Ms. Gaither was qualified for each position and whether she can provide facts to give rise to an inference of unlawful discrimination in view of AFMC's proffered reasons for failing to promote her.

### 1.      The Program Assistant Positions

AFMC contends that Ms. Gaither cannot establish a *prima facie* case because she cannot show that she is similarly situated with individuals who were promoted to the Program Assistant positions.  AFMC further contends that, even if Ms. Gaither can establish a *prima facie* case, she cannot show pretext to rebut its legitimate, nondiscriminatory reason for its actions.

While there have been conflicting cases in the Eighth Circuit on the standard for determining whether employees are "similarly situated" at the *prima facie* stage of *McDonnell Douglas*, at the pretext stage, the plaintiff must show that she and her comparators were "similarly situated in all relevant respects—a rigorous standard at the pretext stage." *Togerson*, 643 F.3d at 1052.  The Court concludes that, assuming without deciding that Ms. Gaither can

establish a *prima facie* case with regard to the Program Assistant positions, her claims fail at the pretext stage.

Here, AFMC has articulated a legitimate, non-discriminatory reason for failing to promote Ms. Gaither to the Program Assistant position to which she applied October 1, 2010, and for which Ms. Perez was hired.  AFMC maintains Ms. Gaither was not the most qualified applicant.  AFMC has presented the affidavit of John Clayborn, the director of human resources at AFMC.  Mr. Clayborn specifically describes how the candidate selected for the position in question was more qualified than Ms. Gaither.[5]  AFMC's burden to demonstrate that it failed to promote Ms. Gaither for a legitimate, nondiscriminatory reason "is not onerous."  *Bone*, 686 F.3d at 954.  Courts do not "sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers, except to the extent that those judgments involve intentional discrimination."  *Id.* at 955 (internal quotation omitted).  Defendants need only proffer a good-faith reason for their action.  *Id.*  AFMC has met its burden.

The Court next examines whether Ms. Gaither has met her burden of demonstrating a material question of fact as to pretext in regard to the Program Assistant position eventually filled by Ms. Perez.  "There are at least two ways a plaintiff may demonstrate a material question of fact regarding pretext."  *Torgerson*, 643 F.3d at 1047.  First, "[a] plaintiff may show that the employer's explanation is unworthy of credence because it has no basis in fact.  Alternatively, a plaintiff may show pretext by persuading the court that a [prohibited] reason more likely motivated the employer."  *Id.*  Ms. Gaither's burden of establishing pretext "merges with the ultimate burden of persuading the court that [she was] the victim of intentional discrimination."

---

[5] Mr. Clayborn's affidavit also addresses the qualifications of Mr. Green and Ms. Sonnier who were selected to fill Program Assistant positions.  As explained, any discrimination claims by Ms. Gaither based on AFMC's selection of Mr. Green and Ms. Sonnier are time-barred.

*Id.* at 1046. "A reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphases in original). "[T]o support a finding of pretext, [the applicant] must show that the City hired a *less* qualified applicant." *Torgerson*, 643 F.3d at 1049 (emphasis in original).

Ms. Gaither does not contend she was more qualified than Ms. Perez. She only contends that she was "equally qualified." This cannot rebut AFMC's legitimate, nondiscriminatory reason to show pretext. *Togerson*, 643 F.3d at 1049. Ms. Gaither makes a general allegation in her response that she was more qualified than Ms. Sonnier. As discussed above, Ms. Gaither's claims regarding the positions filled by Ms. Sonnier are time-barred. Even if her claims regarding the position filled by Ms. Sonnier were not time-barred, they would fail. Ms. Gaither admitted in her deposition that she was simply "just as" qualified as the applicants chosen for the Program Assistant positions (Gaither Depo. at 128, Dkt. No. 71-1, at 45). She contends that she had an associate's degree and believes that Ms. Sonnier does not. Even if true, this alone does not make Ms. Sonnier less qualified than Ms. Gaither. The Program Assistant position did not require an associate's degree, and Mr. Clayborn specifically cited Ms. Sonnier's experience as a CNA as more relevant than Ms. Gaither's prior experience. At best, Ms. Gaither has asserted that she has comparable qualifications to Ms. Sonnier, and she asserts only that she was equally qualified to Ms. Perez. These allegations are insufficient to show pretext. Similar qualifications do not show pretext or raise an inference of discrimination. *Torgerson*, 643 F.3d at 1049.

The Court concludes that Ms. Gaither has failed to present a genuine issue of material fact on her claims that AFMC discriminated against her in failing to promote her to the Program Assistant positions.

## 2.      The Program Coordinator Positions

AFMC argues that Ms. Gaither was not qualified for the Program Coordinator positions to which she applied on January 15, 2010 and June 6, 2011, which were filled by Ms. Shachmut and Ms. Pagan, respectively.   AFMC claims that three years of experience in healthcare and experience in HIT or EHR were requirements for the positions, and Ms. Gaither conceded in her deposition testimony that she had no experience in healthcare, HIT, or EHR (Gaither Depo. at 94-95, 122-23, Dkt. No. 71-1 at 24-25, 40-62).   However, Ms. Gaither's affidavit states that she had over ten years of experience in data entry in the healthcare industry (Gaither Aff., Dkt. No. 74 at 8).   AFMC also argues that, even if Ms. Gaither was qualified, she cannot meet the fourth element of a *prima facie* case because she was not similarly situated to the employees selected for the Program Coordinator positions, who AFMC contends were more qualified than Ms. Gaither.   AFMC also relies on this alleged disparity in qualification to show a legitimate, nondiscriminatory reason for failing to promote Ms. Gaither to the Program Coordinator positions in question.

The Court concludes that, even if Ms. Gaither could establish a *prima facie* case of racial discrimination, she has not demonstrated a genuine issue of material fact that AFMC's legitimate, nondiscriminatory reason for selecting other candidates for the positions at issue was pretext for race discrimination.   Here, AFMC has provided a legitimate, nondiscriminatory reason for selecting other candidates for the Program Coordinator positions to which Ms. Gaither applied.   Mr. Clayborn in his affidavit describes the qualifications and experience of Ms. Shachmut and Ms. Pagan.   AFMC has met its burden of proffering a good-faith reason for its actions, and the burden then shifts back to Ms. Gaither to show that AFMC's preferred reason is pretextual.

Ms. Gaither contends that she was more qualified for the Program Coordinator position than Ms. Shachmut because she had an associate's degree in computer science and over ten years of experience in data entry in the healthcare industry, whereas Ms. Shachmut had only six months of experience with AFMC as a Program Assistant.  At best, Ms. Gaither asserts that she had relevant experience that she believes outweighed Ms. Shachmut's experience as a Program Assistant, and this assertion is questionable in view of Ms. Gaither's own admissions that she was not qualified for the position and that she did not know Ms. Shachmut's qualifications (Gaither Depo. at 96-97, 99, Dkt. No. 71-1, at 27-29).  Even if Ms. Gaither had comparable qualifications, this alone does not raise an inference of pretext.  *See Togerson*, 643 F.3d at 1049; *Lidge-Myrtil v. Deere & Co.*, 49 F.3d 1308, 1311 (8th Cir. 1995) ("Although [an employee] does possess the experience and some of the other qualities essential for success in the position, this does not suffice to raise an inference that [the employer's] stated rationale for giving the position to another is pretextual.").  Therefore, even if Ms. Gaither's claim regarding Ms. Shachmut was timely, which the Court has concluded it is not, the claim would fail.

Ms. Gaither also does not contend that she was more qualified than Ms. Pagan, who ultimately filled the second Program Coordinator position after it became the Senior Program Coordinator position (Gaither Depo. at 128, Dkt. No. 71-1, at 45).  She does not raise an inference of pretext.  The Court considers separately and addresses in the analysis below Ms. Gaither's claims that the qualifications of this position were changed in retaliation for her prior complaint of discrimination.

For these reasons, the Court concludes that Ms. Gaither has failed to create a genuine issue of material fact that AFMC discriminated against her in failing to promote her to the Program Coordinator positions.

### 3.      The Computer Support Specialist Positions

AFMC contends that Ms. Gaither cannot establish that she was qualified for the Computer Support Specialist positions or that similarly situated applicants were selected instead. Ms. Gaither conceded in her deposition and affidavit that she did not possess the specific qualifications for the computer system being utilized in the Computer Support Specialist position (Gaither Depo. at 100-03, Dkt. No. 72-1 at 29-32; Gaither Aff., Dkt. No. 74 at 9).  However, she states that it has been her experience "that a certain level of on-the-job training is customary in these positions."  (Gaither Aff., Dkt. No. 74 at 9).

AFMC maintains that, even if Ms. Gaither was qualified, she was not similarly situated to the employees chosen for the Computer Support Specialist positions, Mr. Moix and Mr. Carver, because they were more qualified than Ms. Gaither.  AFMC also cites these alleged disparities in qualification to show a legitimate, nondiscriminatory reason for not selecting Ms. Gaither for the Computer Support Specialist positions.  These matters are addressed by Mr. Clayborn in his affidavit.  The Court concludes here, as well, that even if Ms. Gaither could establish a *prima facie* case, her claim would fail at the pretext stage.  AFMC has proffered legitimate, nondiscriminatory reasons for selecting Mr. Moix and Mr. Carver.  Ms. Gaither offers no support to rebut these reasons or to show pretext.  Ms. Gaither admitted that she does not know the qualifications of the individuals selected for the Computer Support Specialist positions, and she does not contend that she was more qualified than either.  Her claim that some on-the-job training was customary at AFMC, even if true, would only go toward showing that she was "minimally qualified" for the position; it would not rebut AFMC's proffered rationale for selecting better-qualified candidates Mr. Moix and Mr. Carver.

The Court finds that Ms. Gaither has failed to establish a genuine issue of material fact on her Title VII claims against AFMC for failing to promote her.  Accordingly, AFMC is entitled to summary judgment on Ms. Gaither's claims for failure to promote.

### C.    Retaliation Claim

To establish a *prima facie* claim for retaliation claim under Title VII, Ms. Gaither must show that (1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action, and (3) there was a causal connection between the adverse employment action and the protected activity.  *Logan v. Liberty Healthcare Corp.*, 416 F.3d 877, 880 (8th Cir. 2005).  If she establishes a *prima facie* case, the *McDonnell Douglas* burden-shifting framework applies.  *Id*.  AFMC argues that Ms. Gaither "may not" be able to show that she suffered an adverse job reaction, because she cannot show that she possessed "the basic skills necessary for the performance of the job."  (Dkt. No. 72, at 15).  AFMC also asserts that Ms. Gaither cannot establish causation.

Title VII claims of retaliation require proof that the desire to retaliate was a but-for cause of the challenged employment action, not merely a motivating factor.  *Univ. of Texas Sw. Med. Ctr. v. Nassar*, —U.S.—, 133 S. Ct. 2517, 2534, (2013).  Generally, more than a temporal connection is required to establish a causal connection.  *Tyler v. University of Arkansas Bd. of Trustees,* 628 F.3d 980, 985 (8th Cir. 2011).  "As more time passes between the protected conduct and the retaliatory act, the inference of retaliation becomes weaker and requires stronger alternate evidence of causation."  *Id.* (citation omitted).  "The inference vanishes altogether when the time gap between the protected activity and the adverse employment action is measured in months."  *Id.*; *see, e.g.*, *Littleton v. Pilot Travel Ctrs., LLC,* 568 F.3d 641 (8th Cir. 2009) (holding that gap of seven months was "not sufficiently contemporaneous" to indicate a causal

connection); *Recio v. Creighton Univ.,* 521 F.3d 934 (8th Cir. 2008) (holding that six month gap did not establish causal connection); *Lewis v. St. Cloud State Univ.,* 467 F.3d 1133, 1138 (8th Cir. 2006) ("We have held that an interval as brief as two months did not show causation for purposes of establishing a retaliation claim and that a two-week interval was 'sufficient, but barely so.'") (citations omitted)).

Even viewing all of the facts alleged in the light most favorable to Ms. Gaither, she can point to nothing more than an alleged temporal connection in support of her retaliation claim— that AFMC restructured the Program Coordinator position after she had filed an EEOC charge of discrimination against AFMC (Dkt. No. 75, ¶6-7; Dkt. No. 74, ¶5).   AFMC restructured the position sometime in July 2011, at least seven months after Ms. Gaither filed her EEOC charge on December 27, 2010.  This seven-month gap is not sufficiently contemporaneous to raise the inference of a causal connection.  Therefore, Ms. Gaither has not established a *prima facie* claim of retaliation.

Because Ms. Gaither has not presented evidence sufficient to create a genuine issue of material fact as to her retaliation claim, AFMC is entitled to summary judgment on Ms. Gaither's Title VII retaliation claim, and her Title VII retaliation claim is dismissed with prejudice.

**D.    Age Discrimination Claims**

Ms. Gaither also appears to claim that she was discriminated against because of her age, but she failed to plead in her complaints a specific claim citing the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621 *et seq*.  Ms. Gaither's complaints allege violations of Title VII, and age is not a protected class under Title VII.  *See* 42 U.S.C. § 2000e-2(a)(1), (2) (prohibiting discrimination on the basis of race, color, religion, sex, or national origin); *Gen. Dynamics Land Sys., Inc. v. Cline,* 540 U.S. 581, 586 (2004) ("Congress chose not

to include age within discrimination forbidden by Title VII of the Civil Rights Act of 1964 . . .

."). On the face of the complaint she filed in Case No. 4:11-cv-00576 (Dkt. No. 2), Ms. Gaither

penciled in an extra category for "age". She also attached her EEOC charge that mentions the

ADEA to the complaint, but that charge is not incorporated into the complaint by reference. She

wrote nothing about age on her second complaint filed in in Case No. 4:12-cv-00373 (Dkt. No.

1). When filing her third complaint in Case No. 4:13-cv-00031 (Dkt. No. 2), she typed in "age"

as an additional ground on the face of the complaint. Based on this, it is unclear whether Ms.

Gaither has stated a cognizable claim for age discrimination. *See, e.g., Taylor v. Brown*, 928

F.Supp. 568, 573 (D. Md. 1995); *Walker v. City of Cabot, Ark.*, 408-CV-00139-BSM, 2008 WL

4816617, at *2 (E.D. Ark. Nov. 4, 2008).

Even if Ms. Gaither properly pled claims for age discrimination under the ADEA, her

claims would not survive summary judgment.[6] Because Ms. Gaither offers no direct evidence of

age discrimination, her claims would be subject to analysis under the *McDonnell Douglas*

framework that the Court applied to her claims for racial discrimination. "Similar to claims of

race discrimination, when a plaintiff has no direct evidence of [age] discrimination, his claims

are analyzed under the familiar burden-shifting scheme of *McDonnell Douglas* . . . ." *Gibson v.

Am. Greetings Corp.*, 670 F.3d 844, 855 (8th Cir. 2012) *cert. denied*, 133 S. Ct. 313 (2012)

(internal quotation and citations omitted).

For the reasons discussed above in the context of Ms. Gaither's claims of race

discrimination, her claims for age discrimination would not survive summary judgment. Even

assuming she could make a *prima facie* claim for age discrimination, she has not offered any

---

[6] For the reasons discussed above, Ms. Gaither's claims relating to the positions filled by
Ms. Shachmut, Mr. Green, and Ms. Sonnier also would be time-barred under the ADEA. *See* 42
U.S.C. § 626 (d)(1)(A); *see supra*, § III.A.

proof that would overcome AFMC's proffered legitimate, nondiscriminatory reasons for failing to promote her.  Ms. Gaither generally claims that she was denied promotion in favor of younger, Caucasian applicants.  This is not sufficient "specific evidence of disparate treatment to survive summary judgment."  *Gibson*, 670 F.3d at 856 (internal quotation and citation omitted).

The Court concludes that even if Ms. Gaither has raised claims for age discrimination, her claims would not survive summary judgment even if properly plead under the ADEA. Accordingly, AFMC's motion for summary judgment is granted as to Ms. Gaither's claims of age discrimination.

> **E.     AFMC's Motion to Dismiss the Complaint for Failure to State a Claim in Case No. 4:13-cv-00031**

Also before the Court is AFMC's motion to dismiss Ms. Gaither's complaint in the related case, Case No. 4:13-cv-00031 (Dkt. No. 9).  AFMC contends that Ms. Gaither's complaint should be dismissed because it was not filed within 90 days of a receipt of the EEOC dismissal and right-to-sue letter.  Ms. Gaither filed her complaint in that case on January 18, 2013 (Case No. 4:13-cv-00031 (Dkt. No. 2)).  Ms. Gaither's complaint states that she filed a charge with the EEOC on June 14, 2012, and that she received a right-to-sue letter from the EEOC on October 20, 2012.  However, the EEOC right-to-sue letter attached to Ms. Gaither's complaint is dated October 10, 2012.  Therefore, Ms. Gaither's complaint claims that she received the right-to-sue letter ten days after it was mailed and exactly 90 days prior to filing her complaint.  AFMC asserts that Ms. Gaither's claim that it took nine days longer for her to receive the right-to-sue letter than AFMC is not credible.  Ms. Gaither has not responded to AFMC's motion to dismiss, and the time for doing so has passed.

"Generally, the ninety-day filing period begins to run on the day the right to sue letter is received at the most recent address that a plaintiff has provided the EEOC."  *Hill v. John Chezik*

*Imports*, 869 F.2d 1122, 1124 (8th Cir. 1989).  The letter is presumed received three days after mailing.  *See Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 148 n.1 (1984).  Ms. Gaither filed the complaint at issue 100 days after the EEOC letter was issued and 97 days after she is presumed to have received it.  The 90-day period is not a jurisdictional prerequisite to federal suit and is subject to the doctrine of equitable tolling.  *Hill*, 869 F. 2d at 1123-24 (citing *Zipes v. Trans World Airline, Inc.*, 455 U.S. 385 (1982)).

Ms. Gaither's complaint offers no factual basis for her contention that she did not receive the letter until 10 days after it was mailed, and she does not argue for the application of any equitable doctrines.  Accordingly, the Court finds that Ms. Gaither's complaint is untimely and, therefore, should be dismissed.

Furthermore, even if Ms. Gaither's complaint in Case. No. 4:13-cv-00031 was timely filed, AFMC is entitled to summary judgment on Ms. Gaither's claims in that complaint.  There, Ms. Gaither alleges that AFMC discriminated against her on or about January 20, 2012, for failing to promote her.  She states that she applied for promotions on many occasions and was declined, and that the positions were filled with younger Caucasians (Case No. 4:13-cv-00031 (Dkt. No. 2, at 2-3)).  From the parties' briefing and the documents submitted to the Court, it appears that Ms. Gaither's allegations in Case No. 4:13-cv-00031 pertain to the Computer Support Specialist position for which Ms. Gaither applied on November 29, 2011, which was filled by Mr. Carver, effective January 24, 2012.  AFMC's motion fully addressed Ms. Gaither's claims regarding the Computer Support Specialist positions filled by Mr. Moix and Mr. Carver.  As discussed above, AFMC has articulated a legitimate, non-discriminatory reason for failing to promote Ms. Gaither to the Computer Support Specialist positions filled by Mr. Moix and Mr. Carver, and Ms. Gaither offers no support to rebut these reasons or to show pretext.

The Court finds that Ms. Gaither's complaint in Case No. 4:13-cv-00031 was not timely filed, but even if it was, Ms. Gaither has failed to establish a genuine issue of material fact that AFMC discriminated against her in failing to promote her to the Computer Support Specialist position filled by Brent Carver on January 24, 2012.

*       *       *

For these reasons, AFMC's motion for summary judgment is granted (Dkt. No. 71). Also, the Court grants AFMC's motion to dismiss in Case No. 4:13-cv-00031 (Case No. 4:13-cv-00031, Dkt. No. 9).   Ms. Gaither's complaints in Case No. 4:11-cv-00576, Case. No. 4:12-cv-00373, and Case. No. 4:13-cv-00310 are dismissed with prejudice.

SO ORDERED this 20th day of August, 2013.


_____
Kristine G. Baker
United States District Judge